<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

October 30, 2020

Saverio A. Viggiano, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant Judy Tull*

Daniel S. Kahn, Esq.
Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
*Counsel for the United States of America*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

  **Re:**  *United States v. Judy Tull & Kay Ellison*
     **Criminal Action No. 15-622 (SDW)**

Counsel:

  Before this Court is Defendant Judy Tull's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.[1]

<u>**DISCUSSION**</u>

A.

  Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant

---

[1] Although the docket indicates that Defendant has filed two separate motions for her release, *see* D.E. 159, 164, this Court treats those filings as a single motion.

compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). As such, under the FSA, "a defendant seeking a reduction in [their] term of imprisonment bears the burden of establishing both that [they have] satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted). Here, the Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

B.

On March 28, 2018, Defendant was convicted of eight counts of wire fraud, mail fraud, and conspiracy in violation of 18 U.S.C. §§ 2, 1349, 1343, and 1344, and, on January 11, 2019, was sentenced to 94 months imprisonment, five years of supervised release, and $19,550,000.00 in restitution. (D.E 103, 147, 148.) Defendant began serving her sentence at Federal Medical Center Carswell ("FMC Carswell") in Texas on February 15, 2019. (D.E. 164 Ex. A; Bureau of Prisons, https://www.bop.gov/locations/institutions/crw/ (last accessed Oct. 28, 2020).)

Defendant's initial request for compassionate release, submitted to the warden at FMC Carswell, was denied on April 8, 2020. (D.E. 159-1 Ex. 1.) Defendant's request for reconsideration

of that decision was denied on May 5, 2020. (*Id.* Ex. 2.)[2] Defendant appealed to the Bureau of Prisons ("BOP") on May 19, 2020. (*Id.* Ex. 3.) On June 8, 2020, Defendant appeared *pro se* and moved this Court for compassionate release under the FSA, seeking a sentence reduction to time served. (D.E. 159.) Following the appointment of counsel, Defendant supplemented her motion on September 21, 2020, requesting compassionate release due to: 1) the spread of the COVID-19 virus in the federal prison system and FMC Carswell; and 2) Defendant's advanced age and medical conditions which she contends "make her more susceptible to contracting the [COVID-19] virus, becoming severely sick, needing hospitalization, and dying." (D.E. 164 at 4, 12-15.)[3] The Government opposed on September 18, 2020. (D.E. 166.)

C.

Defendant, a 75-year-old woman, contends that her age, asthma, cerebrovascular disease,[4] hypertension, back pain and degenerative disk condition, vertigo, and inability to walk without assistance make her more vulnerable to becoming seriously ill should she contract COVID-19. (D.E. 164 at 4 at 6-11.) According to the Centers for Disease Control and Prevention ("CDC"), people with moderate to severe asthma, cerebrovascular disease, and hypertension might be at an increased risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions* (last updated Oct. 6, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. The CDC has not found that back pain or disk degeneration, vertigo or difficulty ambulating place individuals at increased risk.

This Court is sympathetic to Defendant's medical concerns regarding possible complications caused by COVID-19, but it will not grant her application because she has not established that "compelling and extraordinary reasons" justify her release. *See Epstein*, 2020 WL 1808616, at *2. Defendant is receiving treatment for her asthma, cerebrovascular disease and hypertension at FMC Carswell, including appropriate medications and medical monitoring. (*See* D.E. 164 Ex. B (providing medical records beginning in March 2019 which detail Defendant's medication regime for all three conditions and medical visits).) It further appears that, despite Defendant's age and medical issues, her condition has not "substantially diminishe[d]" her ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, cmt. n.1(A); *see generally* D.E. 164, Ex. B (describing Defendant's ability to self-administer various medications including asthma inhalers, increased tolerance for physical therapy, ability to "stand,

---

[2] The BOP also separately evaluated Defendant's eligibility for release to home confinement pursuant to direction from the United States Attorney General. (*See* D.E. 159-1 Ex. 6; 166 Ex. GX-C.) Defendant did not qualify and was denied home confinement. (*Id.*)

[3] Defendant continues to request a reduction to "time served," but states that "[i]f there are any doubts about additional need to protect the community or punish, then the Court may convert a portion of her supervision to home detention." (D.E. 164 at 20.) Although this Court does not have the authority to order such relief, it does have the authority to issue a recommendation to the BOP. *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the Bureau of Prisons at any time").

[4] Specifically, Defendant contends that she suffers from "a blockage or narrowing in the arteries supplying blood and oxygen to the brain" which has caused her to suffer five previous strokes. (D.E. 164 at 6.)

pivot & sit w/o signs of vertigo/loss of balance," and to use a "walker effectively with normal gait speed," x-ray results indicating "lung volumes within normal limits," and stress test results indicating that Defendant "developed no symptoms during the stress exam" and exhibited a "normal sinus rhythm").)[5]

Multiple decisions in this District have denied compassionate release to inmates suffering from asthma, hypertension, and/or other health issues, despite the risk of COVID-19. *See, e.g.*, *United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *3–5 (D.N.J. July 13, 2020) (finding that defendant's obesity, asthma, and other factors did not constitute "extraordinary and compelling reasons that would justify his compassionate release," where the facility was providing adequate care); *United States v. Zaffa*, Crim. No. 14-050-04, 2020 WL 3542304, at *2 (D.N.J. June 29, 2020) (denying motion for compassionate release, finding chronic asthma that could be "controlled by careful attention to medication and behavioral prescriptions of" BOP physicians did not create "an extraordinary and compelling reason" for release); *United States v. Wax*, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (denying defendant's motion for compassionate release even though he suffered from hypertension and obesity because he was receiving "regular and consistent medical care"); *United States v. Falci*, Crim. No. 17-228, 2020 WL 3410914, at *1, *4 (D.N.J. June 22, 2020) (denying motion for compassionate release where defendant was 60 years old and suffered from obesity, hypertension, and other health issues); *United States v. Govil*, Crim. No. 18-607, 2020 WL 2992162, at *2 (D.N.J. June 4, 2020) (denying an asthmatic defendant's motion for compassionate release, noting "that multiple courts have denied release to older inmates and asthmatic inmates despite the risk of COVID-19"); *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release where defendant suffered from hypertension and obesity but medical records showed that the BOP was "adequately managing [his] medical care").[6]

Even if this Court were to find that Defendant's health conditions constituted an extraordinary and compelling reason for release, it would still deny her motions because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against her early release. If released now, Defendant will have served less than one-fourth of her 94-month sentence for crimes that involved the fraudulent misuse of over $19,000,000.00. Such a sentence would not "reflect the seriousness [of the offense]," promote respect for the law, provide appropriate punishment for the offense, or protect the public by deterring others from similar future conduct. *See* 18 U.S.C.

---

[5] Defendant's medical conditions existed at the time of sentencing and were considered by this Court when imposing sentence. (D.E. 157 at 35-36.)

[6] This Court also recognizes that the conditions at FMC Carswell are concerning. Six inmates have died after contracting COVID-19 at that location. *See Federal BOP COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed Oct. 28, 2020). The Court also notes, however, that the total inmate population is 1048 (with an additional 234 inmates at the adjacent minimum-security satellite camp), and as such, it does not appear that the facility is suffering from an uncontrollable outbreak of the virus. (*See* Federal Bureau of Prisons, FMC Carswell, https://www.bop.gov/locations/institutions/crw/ (last accessed Oct. 28, 2020). Having reviewed the safety protocols and procedures instituted by the Bureau of Prisons, (*see* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Oct. 28, 2020)), this Court finds that Defendant's risk of serious illness or death is not substantially higher simply because she is in custody at FMC Carswell.

§§ 3553(a)(2)(A); *see also* D.E. 157 at 36-39 (discussing factors considered in imposing Defendant's sentence). It would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing"); D.E. 157 at 35 (noting the importance of avoiding "unwarranted sentencing disparities"); D.E. 142 (sentencing Defendant's co-defendant Kay Ellison to 94 months imprisonment for the same crimes).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. Should a change in circumstances so require, Defendant may renew her motion. An appropriate order follows.

                                  ___/s/ Susan D. Wigenton_____
                                  **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties